IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Steven Carl Thomas-Winfrey, #188306,<br><br>      Petitioner,<br><br>  vs.<br><br>State of South Carolina; Warden Anthony; Henry McMaster, Attorney General of SC; and SC General Assembly,<br><br>      Respondents. | Civil Action No. 8:03-3783-HFF-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

  The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

  Under *Houston v. Lack*, 487 U.S. 266 (1988), the petitioner commenced this action on November 9, 2003, filing a petition and a lengthy supporting memorandum. The petitioner attacks his classification as a sex offender under the South Carolina Sex Offender Registry Act (the "Act"). *See* 1994 S.C. Acts 5129, 5794-99, codified at S.C. Code Ann. §23-3-400 to §23-3-490. The respondents were served and filed a return and motion for summary judgment on March 19, 2004. Pursuant to *Roseboro v. Garrison*, 528 F. 2d 309 (4th Cir. 1975), and *Webb v. Garrison*, No. 77-1855 (4th Cir. decided July 6, 1977), this court filed

an order on March 29, 2004, advising the petitioner of the summary judgment procedure. On April 16, 2004, the petitioner filed a response with Appendices A-D.

In a report subsequently filed, the undersigned recommended that the motion for summary judgment be denied. On February 24, 2005, the Honorable Henry F. Floyd, United States District Judge, filed an order denying the motion for summary judgment and recommitting this matter to the undersigned for development of the record regarding the two following issues:

> (1)     whether the period of limitations established by the Anti-Terror and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. §2254(d), should apply as a time-bar to this petition;
>
> (2)     whether the registration requirements of the South Carolina Sex Offender Registry Act (the Act), codified at S.C. Code Ann. §23-3-400 to §23-3-490, represent an improper application of an *ex post facto* law with regard to the petitioner's 1992 convictions before the Spartanburg County Court of General Sessions on five (5) counts of Kidnapping (92-GS-42-1471, 92-GS-42-1472, 92-GS-42-1473, 92-GS-42-1474 and 92-GS-42-1475).

On April 28, 2005, this court filed an order directing the parties to answer special interrogatories. In addition, the order directed the parties to submit briefs or memoranda on the following questions:

> (1)     What remedy, if any, is available in South Carolina for a person convicted of kidnapping before June 12, 1998, who has been notified of a requirement to register as a sex offender under S.C. Code Annotated §23-3-430(A), but who contends that his conviction did not involve a sexual offense under S.C. Code Annotated §23-3-430(C)(15)?
>
> (2)     Was the decision by the South Carolina Department of Corrections (SCDC) to classify the petitioner as a sex offender under S.C. Code Annotated §23-3-430(A) a "judgment of a State court" under 28 U.S.C. 2254(a)?
>
> (3)     If the SCDC decision to classify the petitioner as a sex offender was not a "judgment of a State court," should this Court construe the present petition as a request for relief under 28 U.S.C. §2241?

2

> (4)   Under *Al-Shabazz v. State*, 527 S.E. 2d 742 (S.C. 2000), and subsequent decisions of the S.C. Supreme Court regarding actions by prison inmates, was the petitioner engaged in the exhaustion of state remedies, regarding his classification as a sex offender, until January 26, 2003, when the South Carolina Administrative Law Judge Division (ALJD) dismissed *Winfrey v. SCDC*, 02-ALJ-04-00171-AP?

On May 9, 2005, the petitioner filed his responses and his memorandum. Thereafter, the respondents filed their responses and memoranda.

## **NATURE OF PRESENT ACTION**

The petitioner filed his petition under §2254. The respondents argue that the petitioner's classification as a sex offender is not a "judgment of a State court" and therefore not amenable to collateral attack in this court under 28 USC §2254. The respondents further contend that the petitioner is not "in custody" by reason of the Act but under his 1992 convictions. The respondents would deny access to this court under §2254.

Similarly, the respondents contend that the petitioner may not seek relief under §2241. They correctly invoke decisions holding that mandatory registration of sex offenders does not satisfy the "in custody" requirement of §2241. *See Leslie v. Randle*, 296 F.3d 518 9 (6th Cir. 2002)(Ohio sex offender registry statute); *McNab v. Kok*, 170 F.3d 1246 (9th Cir. 1999) (Oregon statute); *Henry v. Lungren*, 164 F.3d 1240 (9th Cir. 1999) (California statute); *Williamson v. Gregoire*, 151 F.3d 1180 (9th Cir. 1998)(Washington statute). A petition by a convicted sex offender attacking mandatory registration, as such, would indeed fail to meet the "in custody" requirements under either §2254 or §2241.

The petitioner, however, has demonstrated a specific consequence flowing from his "sex offender" classification – that is, a letter, dated July 15, 1999, from Rodney Beache, SCDC Program Assistant, advising him:

> I am sorry to inform you that you are not eligible to go to a Designated Facility due to your current Sex Offense. However, I did leave a message with Mr. Graves about your interest in Out of State Parole.

(Resp. to m.s.j., app. C, ex. 6.)

Denial of placement in a particular facility, of course, does not in itself implicate a federally protected right. It is well settled that prisoners, federal or state, who are lawfully incarcerated have no constitutionally protected interest in their custody classifications or places of confinement. *Moody v. Daggett*, 429 U.S. 78 (1976); *Meachum v. Fano*, 427 U.S. 215 (1976); *see also Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996); *Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994); *Gorham v. Hutto*, 667 F. 2d 1146 (4th Cir. 1981); *Cooper v. Riddle*, 540 F. 2d 731 (4th Cir. 1976). On the merits, therefore, a petition for *habeas corpus* relief challenging the place of confinement, as a matter of sentence execution, would fail.

The present inquiry, however, does not concern the merits. It is a threshold characterization of this action. Put another way, the question is what is the proper vehicle for this court to review the classification of petitioner as a sex offender given that the classification has actually affected the execution of his present sentence.

At this point a difficult question of law arises. Six United States Circuit Courts of Appeals have held that *state* prisoners must apply under 28 U.S.C. §2254 whether they are attacking *execution* of a sentence or the *underlying conviction*.[1] *See Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003)(challenge to prison disciplinary may be brought under §2254 or §2241, but is subject to all §2254 restrictions as the more specific statute)*; Peoples v. Chatman*, 393 F.3d 1352 (11th Cir. 2004)(applies *Medberry* to petition challenging parole revocation); *Dill v. Holt*, 371 F.3d 1301 (11th Cir. 2004)(applies *Medberry* to petition challenging parole revocation); *Thomas v. Crosby*, 371 F.3d 782 (11th Cir. 2004)(applies *Medberry* to petition challenging parole release date);[2] *White v. Lambert*, 370 F.3d 1002 (9th Cir. 2004)

---

[1] By contrast, federal prisoners must seek *habeas* relief from an *underlying conviction* by a §2255 motion to vacate while attacking *execution* of a sentence through a §2241 petition.

[2] In *Thomas*, Circuit Judge Tjoflat specially concurred with a lengthy and carefully argued opinion. In his view, §2254 and §2241 are separate avenues for *habeas* relief (albeit overlapping as an unfortunate result of Congressional drafting). Justice Tjoflat believes that §2241 petitions by state prisoners should not be encumbered by §2254 restrictions because §2254 is not (continued ...)

4

(§2254 is "the exclusive vehicle" for challenging transfer to a private prison); *James v. Walsh*, 308 F. 3d 162 (2nd Cir. 2002)(challenge to sentence calculation should be brought under §2254 because this statutory provision is broad enough to include attacks on the underlying conviction and execution of sentence); *Cook v. New York State Div. of Parole*, 321 F. 3d 274 (2nd Cir. 2003)(applies *James* to petition challenging parole revocation); *Singleton v. Norris*, 319 F.3d 1018 (8th Cir. 2003)(§2254 is the "only means" for a state prisoner to challenge an underlying conviction or execution of sentence); *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000) (§2254 is the "exclusive vehicle" for state prisoners to challenge prison disciplinary proceedings); *Crouch v. Norris*, 251 F.3d 720 (8th Cir. 2001)(applies *Walker* to petition challenging parole denial); *Coady v. Vaughn*, 251 F. 3d 480 (3rd Cir. 2001)(challenge to denial of parole is proper under both §2241 and §2254, but §2254 is preferred where a state remedy is available and unexhausted).

A "minority" view has been articulated by the Tenth Circuit and adopted, without discussion, by the Sixth Circuit. *See Montez v. McKinna*, 208 F. 3d 862, 865 (10th Cir. 2000) (constitutional challenge to prison transfer – albeit without merit – "seems to fit better under the rubric of §2241" than §2254); *Greene v. Tennessee Dep't of Corr.*, 265 F. 3d 369 (6th Cir. 2001)(a §2241 petition properly challenges administrative denial of double credit under a sentencing credit incentive program); *Rael v. Williams*, 223 F.3d 1153 (10th Cir. 2000)(constitutional challenge to a prison transfer – albeit without merit – is best pursued under 42 U.S.C. §1983, but is also proper under §2241, following *Montez*). The Sixth Circuit held that the §2241 petition was subject to the AEDPA statute of limitations. The Tenth Circuit, in *Montez* required only exhaustion of available remedies.

---

(continued ...) the sole and exclusive avenue available to prisoners in custody under state convictions. Finally, he notes that exhaustion of available state remedies is required in actions brought under both §2254 and §2241, being required in the former case by statute – §2254(b)(1)(A) – and in the latter case by decisional law, such as *Coleman v. Thompson*, 501 U.S. 722 (1991).

5

The Fourth Circuit has not yet had occasion to explore these complicated issues. The undersigned is not aware of any reported decision in this District discussing the interplay of §2241 and §2254 in comparable circumstances – that is, a state prisoner seeking relief from a change in the *execution* of a sentence brought about by events completely unrelated to the original convictions or the resulting incarceration. As the foregoing cases illustrate, state inmates seeking to evade §2254 requirements frequently argue that custody after a parole revocation (an administrative process) is not custody pursuant to a state court judgment. In *Wade v. Robinson*, 327 F. 3d. 328 (4th Cir. 2003), the Fourth Circuit has rejected this argument:

> Most immediately Wade does find himself, in common parlance, in custody by virtue of the parole board's decision to revoke his parole. But he still is, and remains, in custody pursuant to his 1994 conviction and sentence. That is, he is in custody pursuant to a state court judgment within the meaning of section 2244(d)(1), even if he also is in custody pursuant to the judgment of a state executive agency.

*Id.* at 331. It does not seem wise, however, to extrapolate broad principles of *habeas corpus* jurisprudence from the limited holding in *Wade*.

The present case involves extraordinary circumstances. None of the authorities cited above involved the execution of a state court sentence which had been affected by an event completely unrelated to the underlying conviction.[3] Accordingly, the undersigned recommends that the present action be treated as a §2241 petition, rather than a petition under 28 U.S.C. §2254.

---

[3] Eric Johnson, Assistant Solicitor General, New York State Department of Law, has published a thorough study of the cases listed above in the New England Journal on Criminal and Civil Confinement. *See An Analysis of the Antiterrorism and Effective Death Penalty Act in Relation to State Administrative Orders: the State Court Judgment as the Genesis of Custody*, 29 New Eng. J. on Crim & Civ Confinement 153 (Summer 2003). On the whole, his essay supports the "majority" view. None of the cases that Johnson discusses, however, present facts similar to this action.

6

## **AEDPA STATUTE OF LIMITATIONS**

Given the variety of circuit court interpretations, application of the AEDPA statute of limitations to this §2241 petition is not a foregone conclusion. This was, of course, the first question referred to the undersigned by District Judge Floyd. This statute of limitations, codified as 28 U.S.C. §2244(d), took effect on April 24, 1996:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A one year "grace period" from the AEDPA effective date has been judicially recognized for petitioners whose convictions became final prior thereto. *Crawley v. Catoe*, 257 F.3d 395 (4th Cir. 2001); *Spencer v. Sutton*, 239 F.3d 626 (4th Cir. 2001); *Hernandez v. Caldwell*, 225 F.3d 435 (4th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000); *Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998).

If the petitioner were attacking his original 1992 convictions, this action would be untimely pursuant to AEDPA. The petitioner, however, seeks relief not from his original convictions, but rather from more recent events. On June 12, 1998, the Act was amended.

7

On November 24, 1998, the petitioner was notified that his kidnapping convictions brought him within the ambit of the amendment. On December 13, 1998, he wrote a letter to his sentencing judge seeking assistance. There is no indication in the record of a response. On March 1, 1999, the petitioner filed an inmate grievance (LCI Grievance 128-99), and, four weeks later, he commenced a *pro se* PCR application (99-CP-42-0743) in the Spartanburg County Court of Common Pleas. In June 1999, his grievance was denied at Step Two. In July 1999, the petitioner was denied access to a designated facility because of his "sex offender" classification.

The petitioner's PCR proceeding continued until June 26, 2002. In its dismissal, the Spartanburg County Court of Common Pleas had suggested that the petitioner should pursue administrative relief under *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E. 2d 742 (2000). Proceeding *pro se*, the petitioner did precisely that, by appealing the grievance denial to the South Carolina Administrative Law Judge Division (ALJD) on March 13, 2002. In the PCR proceeding (99-CP-42-0743), the South Carolina Supreme Court denied writ of certiorari on June 26, 2002, confirming that this matter was not appropriate for PCR determination. Finally, on January 16, 2003, the ALJD dismissed the administrative appeal on jurisdictional grounds (not as time-barred).

The facts of this present action make it very difficult to apply the AEDPA limitations period in a meaningful way. Under §2244(d), the one-year limitation commences with one of four alternative events: (1) a "final" judgment; (2) removal of an "impediment" created by state action; (3) Supreme Court "recognition" of a constitutional right given retroactive application; or (4) discovery of a "factual predicate" previously unknown.

The Ninth Circuit, in a footnote to *White v. Lambert*, recognized "some statutory awkwardness" in imposing the full panoply of §2254 restrictions to §2241 petitions filed by state convicts. In particular, the court recognized that a state administrative proceeding could not trigger the limitations period of §2244(d)(1)(A) because it was not a "judgment."

8

Disappointingly, however, the court proposed no resolution of the problem and instead simply invoked *Lindh v. Murphy*, 521 U.S. 320, 336 (1997): "in a world of silk purses and pig's ears, [AEDPA] is not a silk purse in the art of statutory drafting." 370 F.3d at 1010, n. 6.[4]

There has been no "judgment" concerning petitioner's "sex offender" classification; the respondents assert that there has not even been a decision.[5] The record of the petitioner's state court proceedings seems replete with "impediments" broadly conceived under §2244(d)(1)(B). His inmate grievances were denied, so he filed a PCR application. The PCR court suggested he should instead proceed administratively, a view affirmed by the South Carolina Supreme Court. When the petitioner resumed the administrative process, the ALJD disclaimed jurisdiction. One might say that the chief "impediment" to the petitioner's quest for relief in state court has been his inability to obtain a decision. This "impediment" has not yet been removed.

As discussed later in this report, application of the Act to the petitioner does appear to violate Section 10, Article One of the United States Constitution. The prohibition on *ex post facto* laws is as old as the Republic itself and has been applied by numerous decisions of the United States Supreme Court since 1798. The §2244(d)(1)(C) limitations period is inapplicable to this case.

Finally, the search for a factual predicate also leads to no sensible conclusion. The petitioner's kidnapping convictions did not include sexual offenses. This fact has not changed since 1992. The amendment of the Act in June 12, 1998, cannot serve as a "factual

---

[4]*White* actually cites the article by Johnson, pp. 183-185, in which he surveys cases and notes different resolutions to the problem of the four alternative commencement dates in §2244(d)(1). Johnson also minimizes the "awkwardness" and invokes the "silk purse" language from *Lindh*.

[5]The respondents seem to view a "sex offender" classification as an automatic or self-executing operation of law under S.C. Code Ann. §23-3-430(E) which evidently occurs at no particular point in time (resp. ans. to interr., p. 4). This argument fails to persuade, however, since the petitioner has experienced a specific consequence from an action taken by some person. As noted above, he has been denied placement in a designated facility. The respondents have at least identified two officials of the SCDC Classification and Inmates Record branch who could testify concerning the "sex offender" classification, however it came about.

9

predicate" since the petitioner evidently did not believe the Act applied to him, even assuming that he knew of the amendment. There was no response to his letter of December 13, 1998, and it would be sheer conjecture to fix a point in time at which a reasonable person would abandon hope of any relief through letter writing. From March 1, 1999, through January 16, 2003, the petitioner was continuously pursuing a remedy either administratively or in a state court proceeding. None of the intermediate stages, including the final ALJD decision, provided the petitioner with a dispositive answer to the question: was he officially a sex offender because of his 1992 kidnapping convictions? It is difficult, therefore, to locate a "factual predicate" to trigger the limitations period under §2244(d)(1)(D).

It was only in their answers to the special interrogatories, filed on May 19, 2005, that the respondents unequivocally stated that the petitioner's 1992 convictions were sex offenses "as a matter of state law." If this pronouncement, coaxed from the respondents in the course of the present action, is viewed as the "factual predicate" under §2244(d)(1)(D), then it would appear that the AEDPA statute of limitations has run for barely two months. Such a result is plainly unhelpful.

It is recommended, therefore, that the AEDPA limitations period be deemed inapplicable to the present petition because of the unique circumstances of this action. Such a finding would follow the reasoning of *Montez* and Tenth Circuit precedents. It would also rest comfortably upon Circuit Judge Tjoflat's special concurrence in *Thomas*.

Even though timeliness may not be an appropriate question in this case, the petitioner nevertheless is subject to the exhaustion requirement applicable in §2241 actions. The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In *Mallory v. Smith*, 27 F. 3d 992, 994 (4th Cir. 1994), the United States Court of Appeals for the Fourth

Circuit declared that the habeas petitioner must "make more than a perfunctory jaunt through the state court system."

The petitioner's four-year-long quest for relief in state court can hardly be described as perfunctory. He has exhausted available state court remedies. The respondents suggest that the petitioner should seek a writ of mandamus in state court or commence a "contested case" under the South Carolina Administrative Procedures Act (APA). These suggestions are not appealing. It is in the interest of justice that the petitioner receive a final resolution of this matter in this court.

### *EX POST FACTO* APPLICATION

The story of the petitioner's underlying conviction is found in the Appendix filed by the respondents in March 2004. On the night of May 10, 1991, the petitioner and five other men broke into the home of Ronnie and Annie Strange in Duncan, South Carolina. They were seeking money and valuables stored in at least one safe. Mrs. Strange was home alone. She was beaten and tied up. One by one, as family members arrived, they were also manhandled and tied up: Mr. Strange; daughter, Renee Stanley; her husband, Charles Stanley, and another daughter, Melody Bowman. It was a brutal crime. Reading the transcript of the guilty plea hearing, frankly speaking, evokes dread. Fortunately, no lives were lost.

The petitioner was ultimately charged in 10 indictments: safecracking (92-GS-42-1469); first degree burglary (92-GS-42-1470); kidnapping Charles Stanley (92-GS-42-1471); kidnapping Renee Stanley (92-GS-42-1472); kidnapping Melody Bowman (92-GS-42-1473); kidnapping Ronnie Strange (92-GS-42-1474); kidnapping Annie Strange (92-GS-42-1475); armed robbery (92-GS-42-1476); armed robbery (92-GS-42-1477); and criminal conspiracy (92-GS-42-1860). On June 2, 1992, the petitioner entered guilty pleas to all charges. The petitioner was sentenced to life imprisonment for safecracking, 30 years for burglary and for each kidnapping charge, 25 years for each armed robbery count, and five

years for criminal conspiracy.[6] It is clear from the transcript that no criminal sexual act was involved in any of the five kidnappings.

In response to the order filed by the undersigned on April 28, 2005, both parties answered the special interrogatories. The initial 10 questions on the interrogatories were identical, the only difference being the number of the indictment:

> 1. Did the crime of kidnapping charged in Indictment 92-GS-42-1471, or the proceedings which resulted in the conviction of the petitioner in June, 1992, "include a criminal sexual offense" as contemplated by S.C. Code Annotated §23-3-420(C)(15)? Yes _____  No _____
>
> 2. If you answered "Yes" to Question (1) above, briefly set forth the facts of the criminal sexual offense.

The questions invited the parties to state their final positions on the single factual issue in this case. The petitioner entered negative answers to each of the lead questions. He steadfastly denies that his kidnapping convictions included any criminal sexual offense. In fact, he is correct.

The respondents answered "Yes" and provided identical explanations under each indictment as follows:

> The Judge did not make an on the record finding that the kidnapping did not include a criminal sexual offense. Therefore, as a matter of state law, this constitutes a sex offense and renders a person a sex offender for purposes of this Section. The indictment set forth the following basis for kidnapping: That Steven Carl Winfrey did in Spartanburg County on or about May 10, 1991, wilfully and unlawfully with criminal intent seize, confine, inveigle, decoy, kidnap, abduct or carry away one Charles Stanley at 511 Gap Creek Rd., Duncan, SC, without authority of law, in violation of Section 16-3-910 of The Code of Laws of South Carolina, 1976, as amended.

(Resp. ans. to interr., pp. 1-4.)

---

[6] The record reflects that the life sentence for safecracking was set aside in a PCR proceeding. Therefore, it is possible that the petitioner could at some point be released and required to register as a "sex offender" even though he has never been convicted of a sex offense.

12

These answers are perplexing, especially given the transcript of the guilty plea hearing. In their answer with respect to indictment 92-GS-42-1472, the respondents report that: "Additionally, the trial prosecutor stated that Winfrey committed a defined, but uncharged sexual battery by tying the victim and threatening that 'he had already done seven years on some other charge and he would just take this little girl,' as set out in App. p. 19." This statement, however, is taken out of context. The remainder of the paragraph reads:

> He never did do any type of anything like that. He just said that. He later refers to that in an undercover report with Johnny Brooks about making that statement to her, to Renee Stanley, but, anyway, she was not assaulted other than to be tied up and tried to get her to open the safe.

Because the trial judge in 1992 made no statement on the record that the kidnappings did not include a sexual offense, the respondents declare: "Therefore, as a matter of state law, this constitutes a sex offense...." The unstated legal predicate for this pronouncement is the amendment of the Act in June 1998, now codified as S.C. Code Annotated §23-3-430(C)(15). Put simply, the respondents contend that the South Carolina General Assembly, by an enactment six years after the petitioner's convictions, transformed one or all five kidnapping convictions into sexual offenses with no factual predicate.

To agree with the respondents would be an approval of "the kind of retroactivity that the Constitution forbids" in Section 10, Article One. *See Stogner v. California*, 539 U.S. 607, 609 (2003) For more than two centuries, the opinion filed by Justice Chase in *Calder v. Bull*, 3 U.S. 386 (1798), has served as the basis for *ex post facto* jurisprudence in both federal and state courts:

> I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different,

> testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.

3 U.S. at 390-391. In applying *Calder*, courts frequently review these four categories of abusive acts and then apply one or more to a challenged statute. *See e.g., Stogner v. California*, 539 U.S. at 611-613.

It might be objected that the first and third categories from *Calder* have no application to the present case, because mandatory registration of sex offenders is not a "punishment." In *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court extended its ruling in *Kansas v. Hendricks*, 521 U.S. 346 (1997) to sex offender registration: "...an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded,'" thus finding that the retroactive application of the Alaska Sex Offender Act did not violate the *ex post facto* clause. *Id.* at 93 (citation omitted).

Decisions both anticipating and following *Smith v. Doe* are abundant, as the respondents correctly state. Yet, among these authorities, this court has not found a single case in which the person subject to registration has never been convicted for a sexual offense. The respondents in *Smith v. Doe* had been adjudged dangerous as sex offenders. From everything provided to this court by the parties, it appears that the petitioner has never been so adjudged. Intuitively, and even logically – under any reasonable definition – mandatory registration as a sex offender would be "punishment" for a citizen who has never committed a qualifying offense.

Whether or not the term "punishment" is appropriate in the present case, the respondents' attempt to apply the Act to the petitioner offends the *ex post facto* prohibition under both the second and fourth tests in *Calder*. The petitioner's five kidnapping convictions – which in 1992 were "simple" acts of kidnapping under the indictments – have now been transformed into one or more kidnappings accompanied by a sexual offense. The convictions

14

have been significantly "aggravated" and "made greater," under the second *Calder* test. The respondents seek to accomplish this transformation "as a matter of state law" and in the complete absence of any factual predicate. A more drastic reduction in the prosecution's burden of proof would be difficult to imagine. To require sex offender registration by the petitioner "as a matter of state law" on the present record meets the fourth *Calder* test.

An alternative formulation of prohibited *ex post facto* legislation is found in the same paragraph from *Calder*. It was summarized in *Weaver v. Graham*, 450 U.S. 24, 29 (1981), citing both *Calder* and *Lindsey v. Washington*, 301 U.S. 397 (1937): "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." The Act, as applied to the petitioner, is both retrospective and has imposed upon him a disadvantage. Thus, the Act as applied to the petitioner is an *ex post facto* law under *Weaver*.

## **CONCLUSION AND RECOMMENDATION**

It is recommended that this court enter a declaratory judgment under 28 U.S.C. §2201 that mandatory sex offender registration by the petitioner pursuant to the Act, by reason of his five 1992 kidnapping convictions, would violate section 10 of Article One, United States Constitution. It is also recommended that this court enter an order granting the petitioner leave to seek enforcement of the declaratory judgment by injunction under 28 U.S.C. §2283, if necessary.

Respectfully Submitted,

s/Bruce H. Hendricks
United States Magistrate Judge

July 28, 2005
Greenville, South Carolina